FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 07, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRAVIS GENTLE and LISA GENTLE, | NO: 2:16-CV-121-RMP |
| Plaintiffs, | ORDER GRANTING DEFENDANT MIPRO US'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| PORTLAND ORTHOPAEDICS LIMITED; PORTLAND ORTHOPAEDICS, INC.; SYMMETRY MEDICAL, INC., doing business as Symmetry Medical Othy; SYMMETRY MEDICAL OTHY; SYMMETRY OTHY; OTHY; MIPRO US , INC.; MAXX HEALTH, INC.; MAXX ORTHOPEDICS, INC.; PLUS ORTHOPEDICS; SMITH & NEPHEW, INC.; and JOHN DOE CORPORATIONS 1-50, | |
| Defendants. | |

BEFORE THE COURT are cross-motions for summary judgment. Plaintiffs

move for partial summary judgment against Defendant Mipro US regarding

ORDER GRANTING DEFENDANT MIPRO US's MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT ~ 1

successor liability. ECF No. 46. Defendants Mipro US, Inc., Maxx Health, Inc., and Maxx Orthopedics, Inc. (collectively, "Defendants") move for summary judgment on liability grounds. ECF No. 51. The Court has heard the parties' arguments, reviewed the relevant pleadings, and is fully informed.

## BACKGROUND

Plaintiffs Lisa and Travis Gentle filed this suit against a number of companies alleging state law claims including negligence, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness, negligent misrepresentation, and fraud. ECF No. 1 at 8-14. Plaintiffs argue that Defendants are liable as "manufacturers" under RCW 7.72.030, as "sellers" under RCW 7.72.040, and under the doctrines of successor liability, *res ipsa loquitor*, acting in concert, agency, and vicarious liability. ECF No. 1 at 10-16. The Court has subject matter jurisdiction over this matter pursuant to diversity jurisdiction under 28 U.S.C. § 1332.

Plaintiffs allege that Mr. Gentle received a surgically implanted M-Cor Modular Hip System ("M-Cor Hip System") in January 2009. ECF No. 46 at 2. It is undisputed that Defendants did not manufacture Mr. Gentle's hip implant. Plaintiffs further allege that, as part of a bankruptcy asset liquidation, the manufacturer of Mr. Gentle's M-Cor Hip System, Defendant Portland Orthopaedics ("Portland Ortho"), sold the rights to manufacture the M-Cor Hip System to Mipro Ortho Pte. Ltd.

("Mipro Ortho"). *Id.* Defendants conceded at oral argument that Defendant Mipro US ("Mipro US") acquired substantially all the assets associated with the M-Cor Hip System product line ("M-Cor product line") from Mipro Ortho. The following chart indicates the transactions involving these corporations:

**Portland Orthopaedics**

(original manufacturer of M-Cor Hip System)

entered into bankruptcy on 12/2/2008 and continues its corporate existence

operating as PLD Corporation Limited[1]

**Mipro Ortho Pte. Ltd.**

(a corporation based in Singapore[2])

purchased certain assets including the M-Cor Hip System product line

from Portland Ortho bankruptcy receivers and administrators[3]

**Mipro US**

entered into a Subsidiary Operating Agreement with Mipro Ortho Pte. Ltd.

---

[1] ECF No. 54 at 4.

[2] ECF No. 56 at 2.

[3] *See* ECF No. 48-7 at 3.

ORDER GRANTING DEFENDANT MIPRO US's MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 3

and became the spec manufacturer of record for

the M-Cor Hip System product line in the United States

from April 2009 until December 2015[4]

    The Court ordered the parties to brief the threshold issue of whether Defendants are liable for the alleged defects of the M-Cor Hip System under the product line theory exception of the successor liability doctrine. ECF No. 45. Plaintiffs allege that Mipro US is liable as a successor to Portland Ortho under the product line theory exception to successor liability, because Mipro US manufactured and distributed the M-Cor product line under the same trade name and design that Portland Ortho had used, "profiting off of the product line's goodwill." ECF No. 46 at 2. Mipro US denies that it has successor liability under any theory and moves for summary judgment in its favor. ECF No. 51 at 2-3.

    Defendants Maxx Health, Inc., and Maxx Orthopedics, Inc., also move for summary judgment, arguing that they are not liable under the successor liability theory. *Id.* at 3. Plaintiffs conceded at oral argument that Defendants Maxx Health, Inc., and Maxx Orthopedics, Inc., are not liable under any theory. Therefore, the

---

[4] *See* ECF No. 48-7 at 3, 5. Mipro Ortho owns Mipro US in its entirety. *See* ECF No. 49 at 8. The agreement allowed Mipro US to use trademarks, service marks, trade names, patents, patent applications, trade secrets, and proprietary information related to the M-Cor Hip System product line. ECF No. 54 at 2.

Court dismisses with prejudice all of Plaintiffs' claims against Defendants Maxx Health, Inc., and Maxx Orthopedics, Inc.

## DISCUSSION

### *Legal Standard for Summary Judgment*

A court may grant summary judgment where "there is no genuine dispute as to any material fact" of a party's prima facie case, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "A key purpose of summary judgment 'is to isolate and dispose of factually unsupported claims.'" *Id.* (citing *Celotex*, 477 U.S at 324).

The moving party bears the burden of showing the absence of a genuine issue of material fact, or in the alternative, the moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's prima facie case. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *See id.* at 324. The nonmoving party "may not rest on mere allegations, but must by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file designate

specific facts showing that there is a genuine issue for trial." *Id.* The Court will not infer evidence that does not exist in the record. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990) (court will not presume missing facts). However, the Court will "view the evidence in the light most favorable" to the nonmoving party. *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1111 (9th Cir. 2016). "[A]ll justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### Applicability of Successor Liability to Defendant Mipro US, Inc.

Plaintiffs allege that Defendant Mipro US should be liable for Plaintiff's alleged injuries under the Washington state product line exception of the doctrine of successor liability. ECF No. 46. Mipro US contends that none of the successor liability exceptions applies in this case and, thus, that it should not be held liable for Mr. Gentle's M-Cor Hip System failure. ECF No. 51.

The traditional common law successor liability rule in Washington is that "a corporation purchasing the assets of another corporation does not, by reason of the purchase assets, become liable for the debts and liabilities of the selling corporation." *Martin v. Abbott Labs.,* 689 P.2d 368, 384 (Wash. 1984). Washington recognizes four common law exceptions to the rule that an asset purchaser is not liable for the seller's debts. *Id.*

The common law exceptions include sales where: (1) the purchaser expressly or impliedly agrees to assume the obligations of the predecessor; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is merely a continuation of the predecessor; or (4) the transaction is fraudulent and intended to escape liability. *Id.* Mipro US asserts that none of the four traditional exceptions is applicable to Mipro US in the present matter, ECF No. 51 at 7, and Plaintiffs concede that no evidence supports the application of any of the four traditional exceptions to Mipro US. ECF No. 46 at 3. However, Washington recognizes another exception to the general prohibition on successor liability, an exception related to the production of a predecessor's product line. *See Martin*, 689 P.2d at 387.

The Washington Supreme Court adopted the product line liability rule in *Martin v. Abbott Laboratories*. *See* 689 P.2d 368 (Wash. 1984). The *Martin* court observed that courts in several states had found that the traditional rules of successor liability failed to address the particular circumstances of a product liability claim. *Id.* at 385-86. The *Martin* court considered the approach taken by state courts in Michigan, Alabama, and Wisconsin extending the "mere continuation" exception to encompass product line liability, *id.* at 385-87, before adopting the approach developed by the California Supreme Court in *Ray v. Alad*, which created a new exception for successor liability specifically designed to deal with product liability

claims. *Id.* at 388 (citing *Ray*, 560 P.2d 3 (Cal. 1977)). The *Martin* court noted that adopting *Ray* placed Washington in accord with the courts in New Jersey and Pennsylvania in adopting a new exception to successor liability theory tailored to product liability. *Id.* (citing *Dawejko v. Jorgensen Steel Co.*, 434 A.2d 106 (Pa. 1981), *and Ramirez v. Amsted Indust., Inc.*, 431 A.2d 811 (N.J. 1981)). Notably, the court in *Martin* did not adopt the version of the product line liability rule employed in New Jersey and Pennsylvania. *See Martin*, 689 P.2d at 388 (citing *Dawejko v. Jorgensen Steel Co.*, 434 A.2d 106 (Pa. 1981), *and Ramirez v. Amsted Indust., Inc.*, 431 A.2d 811 (N.J. 1981)).

In adopting the product line liability rule established in *Ray*, the *Martin* court noted the policy considerations "favoring continued protection for injured users of defective products" enumerated in *Ray*:

> (1) the nonavailability to plaintiff of any adequate remedy against [the transferor] as a result of [the transferor's] liquidation prior to plaintiff's injury, (2) the availability to [the transferee] of the knowledge necessary for gauging the risks of injury from previously manufactured [units] together with the opportunity to provide for meeting the cost arising from those risks by spreading it among current purchasers of the product line and (3) the fact that the good will transferred to and enjoyed by [the transferee] could not have been enjoyed by [the transferor] without the burden of liability for defects in [units] sold under its aegis.

*Id.* at 387 (quoting *Ray*, 560 P.2d at 5).

Based on these policy considerations set forth in *Ray*, the *Martin* court observed that "[t]his narrowly drawn rule strikes a fair balance among the competing

considerations of product liability and corporate acquisitions." *Id.* at 388. The

*Martin* court further observed that the "benefit of being able to take over a going

concern manufacturing a specific product line is necessarily burdened with potential

product liability linked to the product line." *Id.* In the context of the corporate

liability that attaches when a corporation takes over a going concern, "[i]mposition

of liability is properly based on the successor's receipt of a benefit from the

predecessor's product line," and the product line liability rule established in *Ray*

"allows the parties to a transfer to consider potential product liability and in fairness

to the competing considerations still leaves some claimants uncompensated and

some forms of transfer immune." *Id.*

Shortly after the Washington Supreme Court issued its opinion in *Martin*, it

again considered the application of the product line liability rule in *Hall v.*

*Armstrong Cork*. *See* 692 P.2d 787 (Wash. 1984). The *Hall* court discussed the

competing policies of strict product liability and corporate acquisitions, and

observed that

> an essential purpose of the product line exception is to afford a products
> liability claimant an opportunity to bring an action against the successor
> corporation when his or her rights against the predecessor corporation
> have been essentially extinguished either de jure, through dissolution
> of the predecessor, or de facto, through sale of all or substantially all of
> the assets of the predecessor.

*Id.* at 791. "A key premise of the product line exception," the *Hall* court noted, "is

that successor liability is only appropriate when the successor corporation by its

acquisition actually played some role in curtailing or destroying the claimant's remedies." *Id.* at 792. Paraphrasing *Martin*, the *Hall* court stated, "[i]n such a way, the product line rule strikes a desirable balance between the competing concerns of product liability and a corporation's need to limit its risk exposure." *Id.* (citing *Martin*, 689 P.2d at 388).

To prove product line liability under Washington law, a plaintiff must show that the product line transferee: (1) has acquired virtually all of the transferor's assets; (2) holds itself out as a continuation of the transferor by producing the same product line under a similar name; and (3) benefits from the transferor's goodwill. *Martin*, 689 P.2d at 387 (citing *Ray v. Alad*, 560 P.2d 3 (Cal. 1977)). *Hall* discusses two additional requirements for product line liability: the predecessor corporation must be unavailable as a source for the plaintiff's remedy; and the successor corporation must have contributed to the predecessor's unavailability. *Id.* at 790-91 (citing *Ray*, 560 P.2d at 8-9).

Mipro US conceded at oral argument that it has held itself out as a continuation of the transferor by producing the same product line under the same name, satisfying one requirement of the product line liability rule. It is undisputed by the parties that Plaintiffs do not have a remedy against Portland Ortho, which satisfies another requirement. Therefore, the remaining issues are whether Mipro US contributed to the unavailability of Portland Ortho as a source for Plaintiffs'

remedy; whether Mipro US acquired virtually all of the transferor's assets; and whether Mipro US benefited from the transferor's goodwill.

*Causation Requirement*

*Hall* requires both that a plaintiff have no available remedy via the predecessor corporation and that the successor corporation contributed to the unavailability of the predecessor corporation as a source for plaintiff's remedy. *Id.* at 790-93. The plaintiffs in *Hall* argued that the causation requirement and the requirement that the predecessor corporation be unavailable were not appropriate or necessary requisites for successor liability under the product line liability rule. *Id.* The court disagreed and held that both requirements were necessary to invoke the product line liability rule. *Id.*

First, the *Hall* court noted that the product line liability rule only applied in situations where the plaintiff would be otherwise left without a meaningful remedy. *Id.* at 791. Second, the court stated that "elemental fairness demands that there be a causal connection between the successor's acquisition and the unavailability of the predecessor." *Id.* The *Hall* court cited *Martin* and *Ray*. *Id.* at 790-93. The court applied the remedy and causation requirements to the facts in *Hall* and found that the plaintiffs could look to the original manufacturer and, "further, the sale of the product line ha[d] no connection to [the predecessor's] present financial condition." *Id.* at 791.

Defendants contend that the Washington Supreme Court adopted the product line liability rule developed in *Ray* and that *Ray* requires the causation element. *Id.* (citing *Ray*, 560 P.2d 3 (Cal. 1977)). Defendants argue that the Washington Supreme Court's decision in *Hall*, just months after its decision in *Martin*, incorporated the causation requirement as part of its decision which is applicable in this case. *Id.* at 4.

Plaintiffs argue that *Hall* does not control in this case, because the *Hall* court's statements were not necessary to the court's decision and can be distinguished from the present case.[5] ECF No. 62 at 7. First, Plaintiffs argue that because the *Hall* court "immediately explained that the product line exception did not apply," the discussion that followed was not necessary to the court's holding, but rather was dicta. *Id.* at 6-10. "A statement is dicta when it is not necessary to the court's decision in a case." *Protect the Peninsula's Future v. City of Port Angeles*, 304 P.3d 914, 921 (Wash. 2013) (*citing Ruse v. Dep't of Labor & Indus.*, 977 P.2d 570 (1999)). Dicta is not binding authority. *Id.* at 922 (*citing Hildahl v. Bringolf*, 5 P.3d 38 (2000)).

The Court does not find this argument compelling. Courts often state a conclusion and then proceed to explain its justification, which appears to be the case

---

[5] Plaintiffs conceded at oral argument that if *Hall* controls then Mipro US is not liable under the product line liability theory.

in *Hall*. *See Hall*, 692 P.2d at 790-93. The plaintiffs in *Hall* argued that both the causation and the unavailable remedy requirements were not required for product line liability to apply. *Id.* at 790. The *Hall* court limited the application of the product line liability rule in Washington by requiring both the predecessor corporation to be unavailable as a remedy and the successor corporation to be the cause of that unavailability. *Id.* at 790-93.

Second, Plaintiffs in this case distinguish *Hall* from the present case and from *Martin*, noting that the predecessor corporation in *Hall* sold one of its "many" product lines and continued as a going concern, with no liquidation of the predecessor's assets occurring. *Id.* at 5-7. By contrast, in *Martin*, the successor corporation acquired all going concern value, customer lists, and the name of the predecessor corporation. *Martin*, 689 P.2d at 388. In the present case, Portland Ortho, the predecessor corporation, liquidated its assets as part of a bankruptcy proceeding, selling one of its product lines to Mipro Ortho, and Portland Ortho continues operating under a different name. *See* ECF No. 54 at 4. The Court does not find the distinctions between *Hall*, *Martin*, and the present case significant for the purposes of determining whether *Hall* is controlling under Washington law.

Plaintiffs also argue that *Hall*'s discussion of causation is not applicable because *Martin* does not discuss the causation requirement. ECF No. 62 at 7. Plaintiffs argue that if Washington had wanted to adopt the causation requirement, it

would have done so in *Martin*.  In *Martin*, the court found that the evidence showed that the successor corporation "purchased substantially all of the assets" of the predecessor corporation, but found that genuine issues of fact remained regarding the second and third requirements of the product line liability rule and ended its analysis.  *Id.* at 388.  The Court does not find the *Martin* court's silence regarding causation determinative.  *Martin* relies on the same fairness considerations that the *Hall* and *Ray* courts examine and apply.  *See id.*

Third, Plaintiffs also argue that *Hall* is not controlling because *George v. Parke-Davis*, a Washington Supreme Court case issued several years after *Hall*, does not apply the causation requirement articulated in *Hall*,.  ECF No. 62 at 10 (citing *George v. Parke-Davis*, 733 P.2d 507 (Wash. 1987)).  In *George*, the U.S. District Court for the Eastern District of Washington certified seven questions regarding product line liability to the Washington State Supreme Court.  *See George*, 733 P.2d at 509.

Question One asked whether carrying on the general pharmaceutical business of the predecessor corporation was sufficient to establish whether a successor corporation was holding itself out to the general public as a continuation of the transferor.  *Id.* at 509-10.  Question Two asked whether, in a product line liability action, a plaintiff must rely solely on the product line liability rule to establish successor liability.  *Id.* at 510.  Questions Three, Four, and Five addressed the effect

of respective defendants' market shares on the distribution of liability. *Id.* at 510-15. Question Six asked the court to address the liability of a raw chemical supplier in a product liability action. *Id.* at 515-16. Finally, Question Seven asked how a settlement agreement would affect the relative market shares of remaining defendants. *Id.* at 516.

Plaintiffs in this case contend that the Eastern District of Washington would not have needed to certify any questions to the Washington Supreme Court if *Hall* controlled. However, the product line liability issue in *George* focused on the second requirement regarding the continued production of the product line: whether the successor companies should be held liable if they had not produced exactly the same product. That is not the issue before this Court. Therefore, the questions that were certified to the Washington Supreme Court in *George* are not relevant in determining whether Washington law imposes a causation requirement.

Fourth, Plaintiffs point to a New Jersey Superior Court case and argue that because New Jersey does not utilize the causation requirement and because New Jersey was cited with approval in *Martin*, the successor product line liability may be satisfied in Washington without satisfying the causation requirement. ECF No. 62 at 5 (citing *Wilkerson v. C.O. Machinery Co.*, 567 A.2d 598 (N.J. Super. Ct. Law Div. 1989)). Plaintiffs argue that *Martin* did not contemplate the causation requirement because the court in *Martin* said it was adopting the product line liability rule from

*Ray* and, in doing so, was in accord with the courts of New Jersey and Pennsylvania, which Plaintiffs argue do not require causation. *Id.* (citing *Martin*, 689 P.2d at 388).

The Court is unconvinced by this argument. Plaintiffs cite to a New Jersey Superior Court case, *Wilkerson v. C.O. Machinery Co.*, 567 A.2d 598 (N.J. Super. Ct. Law Div. 1989). The Court gives little weight to Plaintiff's citation to *Wilkerson* both because it is not an opinion from that state's highest court, and because it is from out of circuit. Both *Martin* and *Hall* make it clear that Washington has adopted the product line liability rule set forth in *Ray. See Hall*, 692 P.2 at 790-93; *Martin*, 689 P.2d at 388. *Ray* justifies imposing strict liability upon a successor to a manufacturer where the acquisition of the predecessor's business by the successor causes the destruction of a plaintiff's remedies against the predecessor corporation. *Ray*, 560 P.2d at 9.

Fifth, in support of their contention that *Hall* is not controlling in this matter, Plaintiffs argue that *Hall* borrowed its causation discussion from a Ninth Circuit case. ECF No. 62 at 8 (citing *Kline v. Johns-Manville*, 745 F.2d 1217 (9th Cir. 1984)). Plaintiffs argue that the *Hall* court, "by not citing to [*Kline v. Johns-Manville*], did not actually intend to adopt California's approach on this portion of the product liability exception." *Id.* Although *Kline* does consider the same issue decided by the *Hall* court, *see Kline*, 745 F.2d at 1219-21, the Court finds that the Washington Supreme Court's not citing *Kline* is insignificant in its analysis.

The Court also notes that several federal district courts have applied *Hall*'s causation requirement in their decisions. *See Williams v. United States Bancorp*, 2008 U.S. Dist. LEXIS 69143, at *18-19 (E.D. Wash. Sept. 12, 2008) (noting that the policy rationale was implicated where the successor's acquisition of assets may have left the plaintiff without a remedy against the predecessor); *Schuman v. Varn Int'l, Inc.*, 2012 U.S. Dist. LEXIS 129221, at *6-7 (W.D. Wash. Sept. 10, 2012) (finding that *Hall* applied even where the successor corporation purchased all of the predecessor's assets directly out of bankruptcy); *Roth v. BASF Corp.*, 2008 U.S. Dist. LEXIS 40178, at *11-12 (W.D. Wash. May 19, 2008) (*citing Hall*, 962 P.2d at 792) (noting that product line liability does not apply where the successor corporation did not actually play some role in curtailing or destroying the claimant's remedies).

The Court finds that the requirements of unavailability of a remedy by the predecessor and causation of the unavailability by the successor in *Hall* are controlling for the purpose of determining whether product line liability attaches in this case. Although *Hall* is distinguishable from this case because the predecessor corporation in *Hall* continued as a going concern available to provide a remedy, *see Hall*, 962 P.2d at 793, here, as in *Hall*, no evidence in the record indicates that Mipro US's acquisition of one product line caused Portland Ortho's financial difficulties and its unavailability to provide a remedy for Plaintiff. *Hall*, at 793.

Because *Hall* is controlling and Plaintiffs concede that Mipro US did not cause the destruction of Plaintiffs' remedy against Portland Ortho, the Court finds that there is no product line liability for Mipro US.

*Asset Acquisition Requirement*

Alternatively, even if *Hall* doesn't control and a reviewing court finds no causation requirement, Plaintiffs have not demonstrated another requirement: that Mipro US acquired substantially all of Portland Ortho's assets.

To prove that a manufacturer is subject to product line liability, a plaintiff must show that the product line transferee has acquired virtually all of the transferor's assets. *See Martin*, 689 P.2d at 387. "The requirement of a transfer of the substantial assets of the predecessor together with its goodwill is founded on the policy that the successor has benefited from the predecessor's goodwill and has acquired the resources to compensate the victims of the predecessor's manufacturing defects." *Hall*, 692 P.2d at 792.

Plaintiffs contend that through Mipro Ortho, Mipro US acquired a propriety interest in the M-Cor product line through the Subsidiary Operating Agreement, and the propriety interest constitutes "substantially all" of Portland Ortho's assets. ECF No. 46 at 12-14; ECF No. 54 at 2. Plaintiffs further argue that the asset acquisition element is satisfied because Portland Ortho divested itself of all significant assets, particularly the M-Cor product line. ECF No. 46 at 10-11 (citing ECF No. 49). As a

result, Plaintiffs argue that Portland Ortho was left a mere shell. *Id.* at 11 (describing the apparent failure and recall of a Portland Ortho product line and attributing Portland Ortho's bankruptcy to that product line). Plaintiffs argue it is thus fair and appropriate to hold Mipro US liable under the product line liability rule, because Mipro US acquired a proprietary interest in the M-Cor product line and became the only successor manufacturer to make and distribute the M-Cor product line after Portland Ortho. ECF No. 46 at 12-16.

Mipro US argues that Mipro US's proprietary interest in the M-Cor product line, obtained from its parent company Mipro Ortho, does not satisfy the asset acquisition element requirements for purposes of product line liability.[6] ECF No. 51 at 15-18. Although it conceded at oral argument that it acquired substantially all of the assets related to the manufacture of the M-Cor product line in the United States, Mipro US contends that the acquisition from Mipro Ortho does not satisfy the asset acquisition factor requirements as they relate to Portland Ortho. Defendants also conceded at oral argument that Mipro US acquired substantially all the assets related

---

[6] Additionally, Mipro US argues that it did not acquire the M-Cor product line directly from Portland Ortho and that indirect acquisition is precluded from the product line liability rule. ECF No. 54 at 2. The Court does not address that argument in this order.

ORDER GRANTING DEFENDANT MIPRO US's MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 19

to the distribution of the M-Cor product line in the United States, but denied that Mipro US acquired all of the assets related to the manufacture and distribution of the M-Cor product line outside the United States.

Likewise, Mipro US did not acquire Portland Ortho's accounts receivable, Portland Ortho's cash, Portland Ortho's contracts, or Portland Ortho's goodwill. *See* ECF No. 52, ¶¶ 15-18; *see also* ECF No. 67 at 2-3. Defendants further argue that a significant amount of Portland Ortho's assets were excluded from the Asset Purchase and Sale Agreement between Mipro US and Mipro Ortho and that the other assets were sold to other entities through the public auction process. ECF No. 51 at 16; ECF No. 52, ¶¶ 13-18; *see also* ECF No. 56.

Although Plaintiffs contend that Portland Ortho divested itself of its significant assets, ECF No. 46 at 10, Plaintiffs have failed to show that Mipro US's acquisition of the manufacturing and distribution rights for the M-Cor product line in the United States constituted substantially all of Portland Ortho's assets. Therefore, the Court finds that Plaintiffs have failed to create a genuine issue of material fact regarding one of the requirements for successor product line liability: whether Mipro US acquired substantially all of Portland Ortho's assets when it acquired a proprietary interest in the M-Cor product line from Mipro Ortho.

/ / /

/ / /

*Benefiting from Goodwill Requirement*

Even if the Court finds that the asset acquisition requirement is satisfied, which it does not, Mipro US also must have benefited from the transferor's goodwill in order to be liable pursuant to the product line liability theory. The parties dispute whether the transferee must benefit from the goodwill of the corporation or merely the goodwill of the product line.

In *Martin*, the Washington Supreme Court refers to the goodwill of the predecessor or transferor, and, in that case, dealt only with instances in which the goodwill of the corporation was at issue. *Martin*, 689 P.2d at 387-88. The "benefit of being able to take over a going concern manufacturing a specific product line is necessarily burdened with potential product liability linked to the product line." *Id.* at 388. In *Hall*, the court stated that "[t]he goodwill transfer contemplated by the product line rule is that associated with the predecessor business entity, not that associated with individual products." *Hall*, 692 P.2d at 792 (citing *Martin*, 689 P.2d at 388-389; *Ray*, 560 P.2d at 10).

Plaintiffs allege that Portland Ortho, Mipro US's predecessor in manufacturing the M-Cor product line, created significant goodwill in the M-Cor product line and that Mipro US benefited from the goodwill attached to the M-Cor product line. ECF No. 46 at 22-23. Plaintiffs argue that benefiting from the

goodwill of the product line is sufficient to satisfy the goodwill requirement. ECF No. 46 at 22-23.

Alternatively, Plaintiffs argue that the M-Cor product line contained all of the goodwill created by Portland Ortho. *Id.* at 23. Plaintiffs note that Portland Ortho designed a unique product, paid for testing the M-Cor Hip System in an independent lab, and obtained FDA approval for the M-Cor product line to be marketed in the United States and other countries. *Id.* at 22-23. Plaintiffs argue that Mipro US used the product name, relied on the FDA approval obtained by Portland Ortho, and highlighted the independent testing and unique design in its brochures. *Id.* Plaintiffs also argue that Portland Ortho's corporate goodwill was encompassed entirely in the goodwill of the M-Cor product line due to the recall of Portland Ortho's other major product line, Margron DTC. ECF No. 62 at 12. However, Plaintiffs concede that "Portland was in receivership so its corporate name had no goodwill." *Id.*

Mipro US contends that in order for product line liability to apply, a successor must benefit from the predecessor corporation's goodwill, rather than the goodwill of a single product line. ECF No. 67 at 8-9. Mipro US argues that it did not benefit from the goodwill of Portland Ortho because it expressly did not purchase the goodwill of the corporation. *Id.* In addition, Mipro US argues that the "underlying policy behind this factor is placing liability upon a successor who benefited from the goodwill of the business and the name of the business." ECF No. 67 at 9 (*citing*

*Ray*, 560 P.2d at 10). Because Mipro US did not use Portland Ortho's name, or expressly acquire Portland Ortho's goodwill, Mipro US argues that it did not benefit from the corporate goodwill of Portland Ortho and, thus, that Plaintiffs have failed to establish the third requirement of product line liability. *Id.*

Under Washington law, product line liability contemplates the benefits derived from the goodwill of the corporation, not a single product line. *See Hall*, 692 P.2d at 792. The Court finds that Plaintiffs have established that Mipro US benefited from the goodwill of the M-Cor product line. Mipro US acquired the proprietary rights to manufacture and distribute the M-Cor product line from its parent company, Mipro Ortho, which purchased a limited list of assets from Portland Ortho and excluded from its purchase specific assets, such as the goodwill of the business. *See* ECF No. 47-1 at 4.

However, the Court finds that Plaintiffs have failed to create a genuine issue of material fact as to whether Mipro US benefited from the goodwill of Portland Ortho, because Mipro US expressly did not acquire the goodwill of the corporation or use the corporation's name. Furthermore, at the time of Mipro Ortho's purchase of the M-Cor product line, Portland Ortho was in receivership, its other major product line had been recalled, and Mipro US could not have benefited from the goodwill of Portland Ortho because, as Plaintiffs concede, Portland Ortho as a corporation had no goodwill. *See* ECF No. 62 at 12.

ORDER GRANTING DEFENDANT MIPRO US's MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 23

In conclusion, the Court finds that Plaintiffs have failed to create any genuine issues of material fact and failed to support the essential elements of the product line liability rule regarding Mipro US's liability.  Therefore, the Court finds that summary judgment is proper regarding the issue of liability and, finding no grounds for establishing liability against Mipro US in this matter, dismisses with prejudice Plaintiffs' claims against Mipro US.

Accordingly, **IT IS SO ORDERED THAT**:

1. Plaintiffs' Partial Motion for Summary Judgment, **ECF No. 46**, is **DENIED**.

2. Defendants' Motion for Summary Judgment, **ECF No. 51**, is **GRANTED**.

3. Plaintiffs' claims against Mipro US, Maxx Health, Inc., and Maxx Orthopedics, Inc., are **DISMISSED with prejudice**.

4. The District Court Clerk is directed to enter judgment in favor of Mipro US, Maxx Health, Inc., and Maxx Orthopedics, Inc.

The District Court Clerk is directed to enter this Order, to terminate Mipro US, Maxx Health, Inc., and Maxx Orthopedics, Inc. as Defendants in this matter, and provide copies of this Order to counsel.

**DATED** February 7, 2018.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge

ORDER GRANTING DEFENDANT MIPRO US's MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 24